IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02357-PAB-MJW

RE/MAX, LLC,

      Plaintiff,

v.

QUICKEN LOANS INC.,

      Defendant,

v.

MOTTO FRANCHISING, LLC,

      Third-party Defendant.

---

**ORDER**

---

      This matter is before the Court on RE/MAX, LLC'S and Motto Franchising, LLC's

Motion to Dismiss Counterclaims [Docket No. 61]. The Court has jurisdiction under 28

U.S.C. § 1332.

## I. BACKGROUND[1]

      Plaintiff RE/MAX, LLC ("RE/MAX") is a real estate franchise company that has a

network of franchisee real estate agents. Docket No. 56 at 16, ¶ 11. Defendant

Quicken Loans Inc. ("Quicken Loans") is a mortgage lender. *Id*. at 16-17, ¶ 12. In early

2014, RE/MAX and Quicken Loans entered into negotiations for a potential marketing

---

[1] The following facts are taken from the answer and counterclaims and
presumed to be true for the purposes of this motion.

alliance.  *Id.* at 17, ¶ 13.  At that time, plaintiff and defendant executed a Non-Disclosure Agreement (the "NDA").  *Id.*  After further negotiations, on July 9, 2015, RE/MAX and Quicken Loans executed a Strategic Marketing Alliance Agreement (the "Agreement"), which took effect on October 15, 2015.  *Id.*, ¶ 15.  The Agreement required RE/MAX to provide marketing services to Quicken Loans in exchange for fees.  *Id.*, ¶ 16 and at 19, ¶ 22; *see also* Docket No. 56-1 .

In September 2015, after Quicken Loans had a third party perform a valuation analysis of the Agreement, Quicken Loans told RE/MAX that the Agreement was overvalued.  Docket No. 56 at 18, ¶¶ 18-19.[2]  RE/MAX responded by making various representations about the extent of marketing services it would provide under the Agreement, such as statements about the number of unique monthly visitors to RE/MAX's website, and offered to provide additional services.  *Id*.  On November 10, 2015, the parties executed the First Amendment to Strategic Marketing Alliance Agreement (the "Amendment").  *Id*. at 19, ¶ 23.  The Amendment requires RE/MAX to provide some of the additional marketing services it offered to provide, such as placing Quicken Loans' logos on RE/MAX's websites.  Docket No. 56-3 at 2, ¶¶ (j)-(k).  Quicken Loans claims that the representations that RE/MAX made before the parties signed the Amendment were knowingly false and that RE/MAX knew that it could not provide the additional services it offered.  Docket No. 56 at 18-19, ¶¶ 20-21.  Quicken Loans also claims that, during the course of performance under the Agreement, it disclosed

_____

[2] Although not challenged by the motion to dismiss, one of Quicken Loans' claims is that changes in the interpretation of the Real Estate Settlement Practices Act meant that the valuation of the Agreement rendered the Agreement void.  *See* Docket No. 56 at 27, ¶¶ 53-56.

confidential information and trade secrets to RE/MAX, but that RE/MAX failed to provide the marketing services required by the Agreement. Docket No. 56 at 20-21, ¶¶ 26, 30. RE/MAX sent invoices to Quicken Loans for services provided under the Agreement and Quicken Loans paid these invoices through the April 2016 invoice. *Id*. at 6-7, ¶ 15. On September 2, 2016, RE/MAX sent a letter to Quicken Loans stating that it was in default under the Agreement for failing to pay invoices. *Id*. at 7, ¶ 16.

Two parallel lawsuits followed. On September 7, 2016, Quicken Loans filed a complaint against RE/MAX in the United States District Court for the Eastern District of Michigan. *Quicken Loans Inc. v. RE/MAX, LLC*, No. 2:16-cv-13233-DML-RSW, Docket No. 1 (E.D. Mich. Sept. 7, 2016). Twelve days later, RE/MAX filed this case. Docket No. 1. Both parties accuse the other of breaching the Agreement. RE/MAX alleges that Quicken Loans failed to pay amounts due under the Agreement. Docket No. 45 at 9, ¶ 29. Quicken Loans alleges that RE/MAX failed to provide services as required under the Agreement. Docket No. 56 at 29, ¶ 75.

On October 25, 2016, RE/MAX launched Motto Mortgage, LLC ("Motto") as a new venture; Motto is a wholly-owned subsidiary of RE/MAX. Docket No. 56 at 15, ¶ 7 and at 24, ¶ 41. Motto is a mortgage provider that provides services similar to those provided by Quicken Loans. *See id*. at 24-26, ¶¶ 42, 45. Quicken Loans named Motto as a third-party defendant in its counterclaims. *Id*. at 14-15, ¶ 3. Quicken Loans alleges that individuals who received Quicken Loans' confidential information and trade secrets while working at RE/MAX became executives at Motto and that RE/MAX used Quicken Loans' trade secrets in starting up Motto's operations. *Id*. at 25-27, ¶¶ 43, 49.

On October 31, 2016, the Eastern District of Michigan transferred its case to this district pursuant to a mandatory forum selection clause in the Agreement. *Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket Nos. 1, 17 (the "transferred case"). On February 2, 2017, Quicken Loans filed a motion to amend its complaint in the transferred case, seeking to add claims for breach of the NDA against RE/MAX, misappropriation of trade secrets against RE/MAX, tortious interference with a contract against Motto, and misappropriation of trade secrets against Motto. *Id.*, Docket No. 37. On April 10, 2017, Magistrate Judge Nina Y. Wang recommended that the motion to amend be granted in part and denied in part. *Id.*, Docket No. 44 at 17-18. Specifically, she recommended that Quicken Loans be permitted to add a claim for breach of the NDA, but that the motion to amend be denied with respect to the other claims. *Id*.

On May 2, 2017, the Court entered an order denying a motion to dismiss this case filed by Quicken Loans and denying a motion for consolidation filed by RE/MAX. Docket No. 53. Instead, the Court administratively closed the transferred case. *Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket No. 47. The Court acknowledged Judge Wang's recommendation on Quicken Loans' motion to amend in the transferred case, but did not rule on the motion to amend. Docket No. 53 at 2 n.1.

On May 16, 2017, Quicken Loans filed its answer and counterclaims. Docket No. 56. Quicken Loans' counterclaims consist of the same nine claims that it sought to bring in the transferred case through its motion to amend, but with some added

allegations about its trade secrets. *Compare* Docket No. 56 at 14-33 *with Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket No. 37-1 at 2-18. On June 6, 2017, RE/MAX and Motto (collectively, "movants") filed the present motion to dismiss. Docket No. 61. They seek to dismiss Quicken Loans' second counterclaim, for fraudulent inducement of the Amendment, as well as Quicken Loans' sixth, seventh, eighth, and ninth counterclaims, which are the same as the four claims that Quicken Loans sought to add in the transferred case through its motion to amend. *Id*. at 3.

## II. STANDARD OF REVIEW

Movants challenge the above-mentioned counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah St. Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v.*

5

*Twombly*, 550 U.S. 544, 555 (2007)) (omission marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Nonetheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

## III. ANALYSIS

### A. Fraudulent Inducement Against RE/MAX

Movants argue that Quicken Loans' fraudulent inducement claim must be dismissed for three reasons: (1) due to the economic loss doctrine, (2) because Quicken Loans does not allege damages resulting from the alleged misrepresentations inducing the Amendment, and (3) because of the integration clause in the Agreement. Docket No. 61 at 4-7.

6

### 1. Economic Loss Doctrine

"Under the economic loss doctrine, 'a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Investments II, LLC*, --- F.3d ----, No. 17-1010, 2018 WL 989586, at *10 (10th Cir. Feb. 21, 2018) (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)).[3] Courts must initially identify "the source of the duties of the parties." *Town of Alma*, 10 P.3d at 1262. "Tort obligations generally arise from duties imposed by law," while "[i]n contrast, contract obligations arise from promises made between parties." *Id.* ("'A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.'" (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995))).[4] As the Colorado Supreme Court made clear, the focus should not be on the nature of the loss, i.e., whether it is economic, but rather on the source of the duty. *Id.* at 1262 n.8 ("[W]e believe that a more accurate designation of what is commonly termed the 'economic loss rule' would

---

[3] The Colorado Supreme Court has identified "three main policy reasons" that support the application of the rule "between and among commercial parties . . .: (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

[4] *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 291 (Colo. App. 2009) ("The court in [*Town of Alma*] did not draw any bright lines among types of torts (e.g., fraud, negligence) that are always barred by the economic loss rule, those that may be barred, and those that are never barred.").

be the 'independent duty rule.'").  In order to avoid the application of the economic loss

rule, one must not only identify an independent duty, but must also assert a tort claim

*based on* that independent duty.

Quicken Loans claims that its fraudulent inducement claim is not barred by the

economic loss rule because the "fraudulent representations that RE/MAX made to

Quicken Loans were separate from the Agreement and Amendment [and] were not

memorialized in the Amendment."  Docket No. 71 at 12.[5]  The Court agrees in part.

Under Colorado law "[i]t is well established that in some circumstances a claim of

negligent misrepresentation based on principles of tort law, independent of any

principle of contract law, may be available to a party to a contract."  *Keller v. A.O. Smith*

*Harvestore Prod., Inc.*, 819 P.2d 69, 72 (Colo. 1991) (citations omitted).  This same

principle applies to fraudulent misrepresentations.  *See id*. (citing *Formento v. Encanto*

*Bus. Park*, 744 P.2d 22, 26 (Ariz. App. 1987)).  Accordingly, a party's

"misrepresentation of material facts prior to the execution of an agreement may provide

the basis for an independent tort claim."  *Id.*[6]  Movants note similarities in language

_____

[5] Quicken Loans also argues that it "incurred non-economic damages as a result of the misrepresentations."  Docket No. 71 at 12. Quicken Loans does not identify any non-economic loss it suffered as a result of RE/MAX's alleged fraud.  Instead, Quicken Loans claims it suffered "'damages stemming from the lost time, energy, and effort expended by its team members.'"  Docket No. 71 at 14 (quoting Docket No. 56 at 28, ¶ 64).  Such damages are economic damages.  *See Coverstar, Inc. v. Cooley, Inc.*, 2006 WL 1579620, at *6 (D. Utah June 1, 2006) (finding a claim for labor costs sought "purely economic losses"); *Town of Alma*, 10 P.3d at 1264 ("Economic loss is defined generally as damages other than physical harm to persons or property.").

[6] While movants argue that the alleged misrepresentations all occurred after the Agreement was signed, and are therefore barred by the economic loss rule, Docket No. 61 at 4, Quicken Loans' claim is premised, instead, on fraudulent inducement of the Amendment.  Docket No. 56 at 28, ¶ 62.

between Quicken Loans' breach of contract claim and its fraudulent inducement claim, but these similarities do not necessarily show that the two claims arise from the same duty. *See* Docket No. 61 at 5-6. As the Colorado Supreme Court noted, misrepresentation claims are "based not on principles of contractual obligation but on principles of duty and reasonable conduct." *Keller*, 819 P.2d at 73 (citing *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043 (Colo. 1983)). Thus, a party's obligations not to use misrepresentations to induce a contract are independent of the party's obligations under the resulting contract. *Id.*; *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 605 (Colo. 2016) ("[P]re-contractual misrepresentations are distinct from the contract itself, and may form the basis of an independent tort claim." (citing *Keller*, 819 P.2d at 72)). However, "the purpose of the economic loss rule is to, among other things, allow the parties to 'reliably allocate risks and costs during their bargaining [and] encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.'" *Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1270 (D. Colo. 2015) (quoting *BRW, Inc.*, 99 P.3d at 72). Thus, to the extent that Quicken Loans alleges misrepresentations by RE/MAX that are memorialized in the Agreement or Amendment, the parties allocated risk with respect to those obligations by contract, and tort claims based on those obligations are barred by the economic loss rule. *See BRW, Inc.*, 99 P.3d at 72 (discussing *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228 (Wyo. 1996)).

Quicken Loans alleges four misrepresentations by RE/MAX:

(1) misrepresenting to Mr. Latka, on September 22, 2015, that there would be 4.25 million unique visitors per month to the remax.com homepage, which would display Quicken Loans' logo; (2) Mike Ryan (Executive Vice President of RE/MAX) intentionally concealing RE/MAX's inability to provide its marketing services in certain independently-owned and operated regions when describing web presence and internet traffic with Mr. Latka, on September 22, 2015 and again during early October 2015, making those representations regarding value, activity levels, and scope of its services false; (3) Mr. Ryan falsely representing to Mr. Latka, several times, including on September 22, 2015, that Quicken Loans' links or logos would be embedded on each property listing webpage (both desktop and mobile-accessed websites) while concealing the fact that RE/MAX did not have the authority or access to provide such marketing services; and (4) Mr. Ryan misrepresenting to Mr. Latka on or about September 22, 2015 that the remax.com site generated over one million direct customer leads to RE/MAX agents (which would include a check-box for more information regarding a loan with Quicken Loans); yet Mr. Ryan knew, when making these false representations, that the sites generated only a fraction of that number of leads (no more than 360,000 leads), and that many of those dramatically reduced leads are actually bogus, automated inquiries (collectively, the "Representations").

Docket No. 56 at 18-19, ¶ 21.[7]

RE/MAX does not identify any obligation under the Agreement or Amendment that reflects the first, second, and fourth representations, which concern the number of unique visitors to RE/MAX's websites per month and the number of leads generated. *See* Docket No. 56 at 18-19, ¶¶ 19, 21. These representations, to the extent they were false, would have misled Quicken Loans regarding the value of the services RE/MAX was obligated to provide under the Agreement and Amendment, but not about RE/MAX's duties under the contracts. Thus, the source of the duty with respect to

---

[7] Although the counterclaims state that the representations are alleged "[b]y way of example," Docket No. 56 at 18-19, ¶ 21, Quicken Loans' briefing does not indicate that it intends to rely on any other representations. *See* Docket No. 71 at 13.

these representations is RE/MAX's independent duty not to make misrepresentations to induce the signing of a contract. *Keller*, 819 P.2d at 73. Accordingly, the Court finds that Quicken Loans' claim is not barred by the economic loss rule insofar as it is based on those alleged misrepresentations. *See id.* at 72.

On the other hand, the third representation, which concerns RE/MAX's ability to provide certain marketing services through its websites, has parallel obligations in the parties' contracts. In particular, the Amendment obligates RE/MAX to modify its mobile site in ways that it had previously agreed to modify its desktop site in the Agreement, Docket No. 56-3 at 2, ¶ j, and to make a "[g]ood faith effort" to modify the remax.com website and RE/MAX mobile app in four specified ways. Docket No. 56-3 at 2, ¶ m.9-12. Thus, after the third alleged representation was made, the parties negotiated and memorialized obligations related to the third representation as part of the Amendment; in particular, RE/MAX obligated itself to provide certain additional marketing services. Docket No. 56-3 at 2. The Agreement and Amendment are thereby the source of any "duty to act to avoid injury" that RE/MAX has to provide such services. *See Town of Alma*, 10 P.3d at 1264 (internal quotation marks omitted). To the extent that RE/MAX failed its obligations under the Amendment, whether because it was unable to perform them or otherwise, it may be liable for breach of contract for failing to meet its contractual obligations. But Quicken Loans' fraudulent inducement claim goes beyond the services RE/MAX ultimately contracted to provide. It seeks to hold RE/MAX liable for being incapable of providing services that RE/MAX allegedly knew it could not provide when the third representation was made. Docket No. 56 at 28, ¶ 59-60. To the extent that, through the Amendment, RE/MAX did not obligate itself to provide such

services, the economic loss rule bars Quicken Loans' claim. This application of the economic loss doctrine "holds the parties to the terms of their bargain, enforces their expectancy interests, and maintains the boundary between contract and tort law." *BRW, Inc.*, 99 P.3d at 72. Accordingly, the Court finds that Quicken Loans' second counterclaim is barred by the economic loss rule insofar as it is predicated on the third representation.

### 2. Damages

Movants argue that the Amendment imposed no new obligations on Quicken Loans and therefore it cannot support a fraud claim. Docket No. 61 at 6 (citing *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007) (Hobbs, J., dissenting)). This argument ignores Quicken Loans' allegation that the Amendment, and the process leading up to it, led Quicken Loans to continue incurring costs that it would have otherwise avoided, thereby resulting in damages. Docket No. 56 at 28, ¶ 64. Movants do not argue that this damages theory is not viable. *See* Docket No. 77 at 3.

### 3. Integration Clause

Movants argue that the fraud claim must be dismissed because of the integration clause in the Agreement. Docket No. 61 at 7. Under Colorado law, general integration clauses do not bar claims based on misrepresentations related to contracts. *Keller*, 819 P.2d at 73. The integration clause in the Agreement is generic and does not specifically preclude misrepresentation claims. Docket No. 56-1 at 16-17, ¶ 12.7. Movants cite *Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 100 (10th Cir. 2007) (unpublished), but that case is inapposite because the contract in that case

contained a refund provision that could be exercised in the event the performance

representations were not met, which has no analogue in this case. The Court finds that

the general integration clause in the Agreement does not bar Quicken Loans' fraud

claims and will allow Quicken Loans' second claim to proceed.

### B. Breach of the NDA Against RE/MAX

Under Colorado law, a breach of contract claim has four elements: "(1) the

existence of a contract; (2) performance by the plaintiff or some justification for

nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting

damages to the plaintiff." *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058

(Colo. 1992) (citations omitted). Quicken Loans alleges that RE/MAX breached the

NDA by disclosing information obtained pursuant to the NDA to Motto to "facilitate the

development and launch of its competing mortgage origination business." Docket No.

56 at 30, ¶ 80.

In the transferred case, Judge Wang found that Quicken Loans stated a claim for

breach of the NDA, but acknowledged that Quicken Loans' allegations were limited:

> To be certain, Quicken Loans's proposed claim for breach of the NDA
> would benefit from additional factual allegations. But at this juncture, the
> Plaintiff need only meet the pleading requirements of Rule 8(a); there is
> no heightened pleading standard that applies to a breach of a NDA.
> Plaintiff identifies the NDA, see [#37-1 at 36], identifies certain categories
> of confidential information accessed by RE/MAX, [*id.* at ¶ 28], identifies
> the manner in which RE/MAX breached the NDA, i.e., RE/MAX failed to
> comply with the terms of the Agreement by using the information for a
> purpose that was not permitted by the Agreement, see [#37-1 at ¶¶ 35,
> 66], and states a plausible way in which it was damaged, including that it
> lost proprietary information to a potential competitor. [#37-1 at ¶¶ 33-34,
> 68]. *See Viesti Associates, Inc.*, 2013 WL 1229534, at *4 (finding that
> plaintiff "has identified works allegedly infringed, the manners in which the
> licenses were allegedly breached, and the plausible ways in which it was
> damaged," and thus plaintiff's "complaint meets the threshold required

13

under notice pleading."). *See also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Drawing all inferences in favor of Quicken Loans, the limited facts pled are sufficient to nudge the claim for breach of the NDA against RE/MAX . . . over the line from speculative to plausible.

*Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket No. 44 at 10-11.

Movants argue that Quicken Loans' allegations are deficient because Quicken Loans "does not provide any allegations indicating that Motto has used Quicken Loans' confidential information, or even suggesting how Quicken Loans believes Motto is using its confidential information." Docket No. 61 at 8-9. The Court agrees. Quicken Loans' allegations of harm from the alleged improper disclosure of its confidential information are conclusory. *See Bestop, Inc. v. Tuffy Sec. Prod., Inc.*, 2014 WL 172299, at *8 (E.D. Mich. Jan. 15, 2014) (dismissing a claim for breach of a confidentiality agreement based on finding that allegations that confidential information was used to create a new product were conclusory). Quicken Loans simply states that, "[u]pon information and belief, RE/MAX used and shared confidential information it obtained about Quicken Loans' confidential, proprietary, and trade secret processes and marketing strategies through the negotiation and implementation of the Agreement to develop, launch, and operate Motto Mortgage." Docket No. 56 at 26-27, ¶ 49. While Quicken Loans alleges various reasons to suspect RE/MAX was economically motivated to use Quicken Loans' confidential information for such a purpose, *see, e.g., id*. at 26, ¶ 47, Quicken Loans does not allege any facts tending to show that it actually did use such information. *See Fuentes-Fernandez & Co., PSC v. The Corvus Grp., Inc.*, 174 F.

14

Supp. 3d 378, 390 (D.D.C. 2016) (dismissing claim for a breach of a confidentiality agreement where the complaint contain allegations as to why the defendant would have been motivated to use the confidential information, but did "not offer any facts from which one could draw the inference that it was used").  In particular, Quicken Loans does not allege anything about Motto's operations that suggest it uses Quicken Loans' confidential business process information.  The only similarities that Quicken Loans alleges between its operations and Motto's are the superficial similarity that Motto is in the same industry and the irrelevant claim that Motto "copied Quicken Loans' slogan," which is not confidential.  Docket No. 56 at 25, ¶ 44.  Because Quicken Loans does not allege facts leading to a plausible inference that it was harmed through use of its confidential information, the Court finds that Quicken Loans' sixth counterclaim fails to state a claim and will dismiss it.

### C.  Misappropriation of Trade Secrets

In order to state a claim for misappropriation of trade secrets, Quicken Loans must allege facts supporting the following elements: (1) Quicken Loans possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) the counterclaim defendant knew, or should have known, that the trade secret was acquired by improper means.  *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (citing Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101 et seq.).  The Colorado Uniform Trade Secrets Act defines a "trade secret" as:

> any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information

relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7-74-102(4).

Quicken Loans brings counterclaims for trade secret misappropriation against both RE/MAX and Motto. Docket No. 56 at 30-33. Based on Quicken Loans' allegations in the transferred case, Judge Wang found that Quicken Loans did not state a claim for trade secret misappropriation:

> Quicken Loans alleges that it disclosed to RE/MAX, "confidential, proprietary, and trade secret" information regarding its marketing strategies, compliance policies, and loan origination practices. [#37-1 at ¶ 28]. But it alleges no facts, taken as true, that allow the court to provide sufficient notice to Defendant as to what subset of "confidential" information constitutes the "trade secrets," or whether all the information is both "confidential" and "trade secret." Nor does Plaintiff aver facts to allow the court to conclude that the alleged "trade secrets" meet the statutory definition. For instance, Quicken Loans generally avers that it "took measures to prevent [the information] from becoming available to persons other than those [whom Plaintiff] selected," [#37-1 at ¶¶ 71-72], but that allegation merely mirrors the statutory language. Quicken Loans does not allege facts that lead the court to that conclusion. *See generally* [#37-1]. Plaintiff does not allege that it required its own employees with access to the trade secrets to enter non-disclosure agreements. *Id*. It does not allege that it separated its trade secrets from other confidential information. *Id*. And Plaintiff does not allege that it subjected the separated trade secrets to heightened protection. *Id*. Finally, Quicken Loans fails to aver facts to support the conclusion that it allowed authorized individuals to access its "trade secrets" only for "a limited purpose." *Id*.

*Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket No. 44 at 12-13.

In this case, Quicken Loans added allegations regarding its trade secrets that did not appear in the transferred case. These additional allegations address some of

Judge Wang's findings by describing two alleged trade secrets with more particularity. First, Quicken Loans has alleged that it disclosed its "unique technology that could identify any lead generated by a RE/MAX agent or the remax.com website[,] how that lead could be directed from the RE/MAX agent or the remax.com website to Quicken Loans[,] and how to secure customized information about that homebuyer's location and needs."  Docket No. 56 at 21-22, ¶ 31.  Second, Quicken Loans has alleged that it disclosed "how its automation and business processes could enable Quicken Loans to resurrect 'cold' leads from RE/MAX agents and return potential homebuyers to RE/MAX agents while also prequalifying them for mortgage loans, thus making their home buying process quicker and more efficient."  *Id.* at 22, ¶ 33.  Quicken Loans also added allegations related to the security precautions it uses to protect its alleged trade secrets. *Id.* at 23-24, ¶ 38.

Movants argue that Quicken Loans' allegations are insufficient because "Quicken Loans failed to even identify what information it believes RE/MAX misappropriated, as opposed to simply describing all the allegedly trade secret information to which RE/MAX had access."  Docket No. 61 at 11.  The Court rejects this argument.  The Court finds that Quicken Loans' allegations plausibly allege that trade secret information was passed to RE/MAX.  Moreover, Quicken Loans' additional allegations are sufficient to identify the nature of the trade secrets allegedly misappropriated.  *See SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012) (explaining that there is no heightened pleading standard for trade secret claims).

Movants argue that Quicken Loans fails to plausibly allege that RE/MAX and Motto obtained trade secrets by improper means through misrepresentations. Docket No. 61 at 11-12. In particular, movants argue the counterclaims contain no allegations about when Quicken Loans disclosed trade secrets and therefore there is no basis to infer that trade secrets were disclosed as a result of misrepresentations. *Id*. Quicken Loans does not respond to this argument. *See* Docket No. 71 at 8-10. The Court agrees with movants that Quicken Loans' failure to allege that it disclosed trade secrets after RE/MAX made misrepresentations is fatal to its claim with respect to RE/MAX. Given that the NDA and Agreement provide a valid basis for RE/MAX to possess Quicken Loans' trade secrets, unless the trade secrets were disclosed after the alleged misrepresentations were made, RE/MAX would have had no reason to know that the trade secrets were acquired by improper means, an essential element of the claim. *See Gates Rubber Co.*, 9 F.3d at 847. Accordingly, the Court will dismiss Quicken Loans' seventh counterclaim against RE/MAX for failing to state a claim.

With respect to Motto, movants argue that Motto's employment of individuals who had access to Quicken Loans' trade secret information is not enough to state a claim. Docket No. 61 at 12 (citing *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) ("*Ciena*")). Further, as with the breach of NDA claim discussed above, movants argue that Quicken Loans' allegations that its trade secrets were misappropriated and used are conclusory. Docket No. 61 at 10-11. Quicken Loans argues that this case is distinguishable from *Ciena* because the "same employees who were working with Quicken Loans' trade

secret information. . . were set up as the senior executives in a brand new competitor, with timing so close that they would have had to be working on the two projects simultaneously." Docket No. 71 at 10.[8] Quicken Loans further argues that it has alleged the difficulties that movants would have faced starting a mortgage business without using its trade secret information. *Id.*

In *Ciena,* a defendant hired the plaintiff's former employee who had access to trade secrets related to the plaintiff's business strategies. 2010 WL 3489915, at *4. The Court found that the defendant's employment of plaintiff's former employee was not enough to show misappropriation because it did not show that the employer misappropriated the trade secrets. *Id.* The court rejected the proposition that Colorado's Uniform Trade Secrets Act "impos[es] strict liability on a corporation that hires a person possessing others' trade secrets" and found that, without "specific factual averments" of disclosure or use, the Court could not impute the employee's acquisition of trade secrets to his new employer. *Id.* As movants argue, Quicken Loans' counterclaims lack any specific factual allegations of disclosure of trade secrets to Motto by RE/MAX's former employees and also lack any specific factual allegations of how such employees used Quicken Loans' trade secrets at Motto.[9] Quicken Loans

_____

[8] Quicken Loans does not specifically allege that any of the individuals were working on implementing the Agreement and starting Motto at the same time. *See, e.g.*, Docket No. 56 at 24, ¶ 39. As discussed below, Quicken Loans does not dispute that the Agreement was terminated before Motto was formed. *See id*. at 24, ¶ 41 n.1 ("Motto Mortgage had registered as a limited liability company in the state of Delaware on August 26, 2016, just weeks after Quicken Loans sent its notice of default to RE/MAX and days before Quicken Loans filed its lawsuit.").

[9] Quicken Loans does not argue so-called "inevitable disclosure" and, in any event, does not allege sufficient facts to support an inference that Motto's employees

simply alleges in conclusory fashion that Motto "used Quicken Loans' confidential information (including its trade secrets) to launch its operations." Docket No. 56 at 27, ¶ 50. Moreover, as the Court found in the context of Quicken Loans' breach of NDA claim, Quicken Loans' allegations that Motto would have had a reason to use its trade secret information is insufficient to state a claim that it actually did so. *See Ciena*, 2010 WL 3489915, at *4 (finding that allegations that the defendant would benefit from "using and exploiting" trade secrets were conclusory and insufficient). Therefore, the Court will also dismiss Quicken Loans' ninth counterclaim for misappropriation of trade secrets against Motto.

### D.   Tortious Interference with a Contract Against Motto

In order to state a claim against Motto for tortious interference with a contract, Quicken must allege facts showing: (1) a contract existed, (2) Motto knew of the contract, (3) Motto induced RE/MAX to breach the contract, and (4) Quicken Loans was injured as a result of the breach. *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1115 (D. Colo. 2004).

In the transferred case, Judge Wang found that Quicken failed to allege facts showing that

> Motto, as the creation of RE/MAX, independently and intentionally interfered with third-party RE/MAX's performance under the Agreement. Plaintiff alleges only that Mr. Morrison and Mr. Scoville, who are not named Defendants to this litigation, had the opportunity to misappropriate and/or interfere. See [#37-1 at ¶¶ 31-32]. This is insufficient to state a

---

inevitably disclosed trade secrets that they possessed. *See, e.g., PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995) (finding that it was inevitable that a former employee would rely on trade secret information in carrying out his duties for his new employer).

claim for Motto's tortious interference with contractual relations between RE/MAX and Quicken Loans.

*Quicken Loans Inc. v. RE/MAX, LLC*, No. 16-cv-02696-PAB-NYW, Docket No. 44 at 15 (footnote omitted).

Quicken Loans argues that its tortious interference claim should be allowed to proceed because it has satisfied the notice pleading requirement of Fed. R. Civ. P. 8. Docket No. 71 at 8. The Court disagrees. As Judge Wang found, plaintiff does not allege any facts from which a factfinder could infer that Motto itself knew of the Agreement before it was breached or intentionally interfered with the Agreement, both of which are required elements of a claim for tortious interference with a contract. *Nobody in Particular Presents, Inc.*, 311 F. Supp. 2d at 1115. Indeed, Quicken Loans does not dispute that Motto did not exist prior to RE/MAX's alleged breach of the Agreement. *See* Docket No. 71 at 10; Docket No. 56 at 24, ¶ 41 n.1. Accordingly, the Court will dismiss Quicken Loans' eighth counterclaim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that RE/MAX, LLC'S and Motto Franchising, LLC's Motion to Dismiss Counterclaims [Docket No. 61] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Quicken Loans' sixth, seventh, eighth, and ninth counterclaims are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6). It is further

**ORDERED** that Quicken Loans' second counterclaim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as barred by the economic loss rule insofar as it is based on representations made by RE/MAX that it could modify its websites.

DATED March 20, 2018.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge